## SOUTHERN PAC. CO. et al. v. WALKER-SMITH CO. (No. 8399.)*

(Court of Civil Appeals of Texas. Galveston. Nov. 6, 1923. Rehearing Denied Dec. 13, 1923.)

**1. Shipping ⚖➡123—Failure to properly stow canned goods held proximate cause of damage.**

Where canned goods were delivered in a frozen condition for shipment by vessel, and defendant knew of such frozen condition, but that the freezing of such goods would not of itself injure or damage them, and if permitted to thaw without artificial heat and with proper ventilation no sweating or other damage would result, and damage was sustained during the voyage by the cans sweating and getting wet and rusty, defendant's failure to properly stow them in the ship was the proximate cause of the damage.

**2. Shipping ⚖➡123—Owner must use due care to ascertain frailties of goods offered for shipment.**

The duty is imposed on owners of ships to use due care in ascertaining and considering particular frailties and character of goods offered for shipment, and exercise due care in stowing them in the first place, and thereafter keep watch to see that they are not damaged in transit if such damage can be reasonably avoided.

**3. Shipping ⚖➡121(1)—Owner not relieved of liability by showing ship not suited to transportation.**

A vessel owner cannot relieve itself from liability for damage to goods shipped by showing that its ship into which the goods were loaded was not suited to transportation of the goods received by it.

**4. Shipping ⚖➡120—Owner charged with notice of patent defects in goods offered for shipment.**

A vessel owner is charged not only with knowledge of the nature of goods expressly made known to it, but also with notice of any patent defect in goods received, and with duty of properly stowing and handling them.

Appeal from District Court, Galveston County; J. C. Canty, Judge.

Action by the Walker-Smith Company against the Southern Pacific Company and another. Judgment for plaintiff against de-

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction January 30, 1924.

'fendant named only, and defendant named appeals. Affirmed.

W. T. Armstrong and W. E. Cranford, both of Galveston, for appellant.

McDonald & Wayman and C. G. Dibrell, all of Galveston, for appellee.

LANE, J.   Walker-Smith Company, hereinafter referred to as appellee, brought this suit against the Southern Pacific Company and the Director General of Railroads, Walker D. Hines, hereinafter referred to as appellants, to recover damages to four lots of canned goods, aggregating 6,180 cases, moving from New York to Galveston between December 6, and December 24, 1917, inclusive.

Plaintiff, appellee here, alleged 'that said goods were delivered to the defendant, appellant, here, in good condition, and that by reason of the negligence of the defendant they were delivered at Galveston in a damaged condition; that such damage consisted of the cans being badly wet, rusty, and puffed, so 'that the labels on the cans had been washed off. The total damage alleged was $900, with 6 per cent. interest thereon from the 1st day of January, 1918.

Defendant answered, and alleged that the damaged condition of the goods was due to their exposure to unprecedented cold weather in and about New York, in that the contents of the cans were frozen at the time said goods were loaded on its vessels at that point, and that they were shipped in their frozen condition to a climate with warmer temperature, and that by reason thereof the cans were caused to sweat and get wet and rusty, and that the damage complained of was due to the inherent nature of the goods when shipped and the operation of natural laws.

Director General of Railroads Walker D. Hines answered by general denial.

The cause was tried by the court without a jury, and judgment was rendered discharging the Director General of Railroads with his costs, and in favor of Walker-Smith Company against the Southern Pacific Company for the sum of $1,120. From so much of said judgment as is against it in favor of Walker-Smith Company, the Southern Pacific Company has appealed.

Upon a demand for a finding of facts and conclusions of law, the court found and concluded as follows:

"Findings of Fact.

"(1) That the four shipments of .canned goods involved in this suit originated at Baltimore, Md., and were all delivered to defendant, the Southern Pacific Company, at New York, by the connecting rail carriers, in good condition.

"(2) I further find, however, that the contents of the cans in all the shipments were in a frozen condition at the time they were loaded aboard defendant's vessels at New York for transportation to Galveston, and also that this fact was well known to the agents and employés of the Southern Pacific Company who loaded said shipments. In this connection I further find, however, that the mere freezing of canned goods, such as those involved in this suit, cannot and does not of itself injure or damage same, and that, if permitted to thaw out without artificial heat, and with proper ventilation, no sweating or other damage results by reason of such freezing.

"(3) I find that all four shipments were delivered to plaintiff, the consignee, at Galveston, by defendant in a damaged condition, the damage being' of the nature and extent as alleged by plaintiff in his petition.

"(4) I find that the agents and employés of the Southern Pacific Company, who loaded the canned goods at New York, knew, or in the exercise of ordinary care should have known, that, unless the canned goods were stowed in the vessels in a place where they would receive sufficient and proper ventilation, the cans would sweat, and that damage to the shipment would thereby result.

"(5) I find that defendant company negligently and improperly stowed all of the shipments aboard their vessels, in that they negligently failed to ' stow said shipments so that they would receive proper and sufficient ventilation.

"(6) That the damage to the canned goods in question was caused by sweating, and that this sweating and damage was proximately caused by the improper stowage of said shipments by defendants, and by their failure to properly and sufficiently ventilate such shipments.

"(7) That the damage in question could have been prevented by the exercise of ordinary care on defendant's part, by the stowing of the goods aboard the vessels where they would receive proper and sufficient ventilation, or by holding the shipments at New York until the contents of the cans thawed out.

"(8) That the several shipments were damaged by defendant by reason of the above facts to the extent of $900.

"From the above conclusions of fact, I conclude, as a matter of law, as follows:

"(1) That defendant, the Southern Pacific Company, is liable to plaintiff for the amount of its damage by reason of defendant's negligence, fault, and failure to properly load, stow, and care for such shipments.

"(2) That plaintiff is entitled to recover from defendant its damages in the sum of $900, together with interest thereon at the rate of 6 per cent. per annum from the 1st day of January, 1918, to the date of the judgment, to wit, January 28, 1922, amounting to $220.20."

Appellant does not controvert the fact findings of the court Nos. 1 to 4, inclusive, nor does it controvert the finding that the goods in question were damaged in the sum of $900, as found by the court, but it does contend that findings 5, 6, and 7 are unsupported by any evidence.

It is agreed by both parties that the principles of maritime law as administered by the courts of the United States must apply in this cause. It is contended by appellant that the judgment rendered against it should be

reversed, and that judgment should be here rendered for it: First, because it was shown that the damage to the canned goods was caused by their frozen condition when shipped on board the steamers, and the humidity, closeness, and warm temperature of the ships' cargo holds, and the warm temperature of the Gulf Stream, the Gulf, and the southern climate which were encountered on the respective voyages, and not by reason of any negligence of appellant; second, that in maritime law the courts judicially notice that the holds of general ships are close and humid, and produce the condition known as "sweat" in goods susceptible to such condition, and that damage thereby caused to such goods is not recoverable because a "peril of the sea" or vis majeur, and as it was shown by the uncontroverted evidence in the instant case that the proximate cause of the damage complained of was one from which appellant, as a carrier, is excused, and the court erred in rendering judgment against it; and, third, that the evidence in this case fails to establish that appellant in any manner known to it, in the showing, managing, and navigating of its ships, could, by the exercise of ordinary care, have prevented the damage shown, and therefore judgment should have been for appellant.

None of these contention can be sustained.

[1] It was shown that the goods involved in this suit were delivered to appellant in a frozen but otherwise good condition at New York, to be shipped to Galveston; that it was known to the agents and employés of appellant who loaded them that at the time such goods were received and loaded they were in a frozen condition; that the freezing of such goods does not of itself injure or damage them, and that, if permitted to thaw without artificial heat and with proper ventilation no sweating or other damage would result by reason of such frozen condition, and that such facts were known to said agents and employés of appellant; that said agents and employés knew that unless such goods were stowed in the ships in a place where they could receive proper ventilation the cans would sweat, and that just such damage as complained of by appellee would result; that notwithstanding such knowledge, said agents and employés negligently failed to so stow said goods; that the goods could have been stowed in the ships where they would have received proper ventilation and the damage avoided; that the failure of the agents and employés of appellant to properly stow said goods in said ships was the proximate cause of the damage complained of, and that such damage amounted to $900.

[2] The law imposes upon owners of ships the duty of using due care to ascertain and consider the particular frailties and character of the goods offered them for shipment, and the exercise of due care in handling such goods, that is, in stowing them in the first place, and thereafter to keep a watch to see that they are not damaged in transit, if such damage can be reasonably avoided. The Jean Bart (D. C.) 197 Fed. 1002; The Mississippi (D. C.) 113 Fed. 987; The San Guglielmo (D. C.) 241 Fed. 970; The Skipton Castle, 243 Fed. 525, 156 C. C. A. 221; Knott v. Botany Woolen Mills, 179 U. S. 69, 21 Sup Ct. 30, 45 L. Ed. 90; Doherr v. Houston (D. C.) 123 Fed. 334.

[3] Appellant cannot relieve itself from liability by showing that its ships into which it loaded appellee's goods were not suited for the transportation of the goods received by it for shipment. In such case the vessels were, under the law, unseaworthy for the handling of appellee's goods, and therefore such goods should not have been loaded into and carried in such vessels. The Jeanie, 236 Fed. 469, 149 C. C. A. 515; The Thames, 61 Fed. 1023, 10 C. C. A. 232.

In the case of The Jeanie, 236 Fed. 469, 149 C. C. A. 515, it is said:

"Whether the Jeanie was seaworthy for the transportation of appellee's cargo on the voyage under consideration depends upon the question whether she was 'reasonably fit to carry the cargo which she had undertaken to transport.' * * * 'As seaworthiness depends, not only upon the vessel being staunch and fit to meet the perils of the sea, but upon its character in reference to the particular cargo to be transported, it follows that a vessel must be able to transport the cargo which it is held out as fit to carry, or it is not seaworthy in that respect.' The Southwark, 191 U. S. 1, 9, 24 Sup. Ct. 1, 4 (48 L. Ed. 65.) 'A ship may be seaworthy as to one sort of cargo and unseaworthy as to another. When a customary and well-known article of commerce is received on board ship and carried on a voyage, the master guarantees the seaworthiness of his ship for taking charge of that article; * * * and, if damage occurs in consequence of the unfitness of the ship for carrying that article, the ship is liable, and cannot exonerate itself by proving * * * that it is capable of carrying safely and without damage, some other article of a different character.'"

To the same effect is the holding in the case of the Thames.

[4] Appellant is charged not only with knowledge of the nature of the goods as was expressly made known to it, but it was also charged with notice of any patent defect in the goods received by it for shipment, and was charged with the duty of properly stowing and handling the same, and, if it was unable to handle such goods safely with its facilities, it should have rejected them. The Erskine M. Phelps (D. C.) 231 Fed. 767, in which it is said:

"There were no latent defects in the crates. Their strength or weakness was apparent when the ship accepted them, and, indeed, the master testified that the tubs were not heavily enough crated to stand a voyage around the Horn. If

this be true, he should not have received them for such a voyage."

The masters of all the ships into which appellee's goods were loaded testified, substantially, that they knew that, where canned goods, in a frozen condition, were loaded into a ship and not given proper ventilation, they would suffer damage such as complained of by appellee in the instant case. They also testified that they had reason to know or believe that appellee's goods, having been taken aboard their vessel in a frozen condition, would, unless stored in a properly ventilated place, sweat, and become wet if shipped to a warmer temperature, and that as a result of such sweating damage, such as complained of by appellee, would result.

For the reasons pointed out, we overrule the contention of appellant, and order that the judgment be affirmed.

Affirmed.